UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JACLYN RACHEL CLARK,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:25-cv-00795-KES-GSA

**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY DEFENDANT'S CROSS MOTION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**

**(Doc. 13, 15)**

## I. Introduction

Plaintiff Jaclyn Rachel Clark seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record the undersigned finds that substantial evidence and applicable law do not support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Plaintiff and against Defendant, reversing the final decision of the Commissioner of Social Security.

## II. Factual and Procedural Background

On April 6, 2022, the claimant filed an application for supplemental security income, alleging disability beginning February 1, 2021 due to conditions including right eye blindness, schizophrenia, depression, genetic disorder and anxiety. AR 17. The claim was denied initially on September 14, 2022, and upon reconsideration on April 21, 2023. AR 17. On September 13, 2024, the ALJ held a hearing. AR 40–69. On September 23, 2024, the ALJ issued an unfavorable decision. AR 14–39. The Appeals Council denied review on April 25, 2025. AR 1–6. Plaintiff then filed a complaint in this Court.

## III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§

416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, Errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

## IV. The ALJ's Decision

At step one, the ALJ found that "The claimant has not engaged in substantial gainful activity since April 6, 2022, the application date." AR 19.

At step two, the ALJ found that Plaintiff had the following severe impairments: "Schizophrenia; substance induced/amphetamine induced psychotic disorder; unspecified depressive disorder; cannabis use disorder; right eye blindness secondary to neurosyphilis; asthma; and neurosyphilis." AR 19.

At step three, the ALJ found that "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." AR 20.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded:

> the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She cannot climb ladders, ropes, or scaffolds; she should avoid more than occasional exposure to dusts, odors, fumes, gases, poor ventilation, and other pulmonary irritants; she cannot perform work requiring intact binocular vision or work requiring precise depth perception, such as threading a needle; she should avoid exposure to workplace hazards, such as moving machinery and unprotected heights, she can understand, remember, and carry out simple instructions; and she can occasionally interact with supervisors and coworkers; she can have no interaction with the public; and she cannot perform job duties requiring team work or tandem work.

AR 23.

At step four, the ALJ found that the claimant has no past relevant work. AR 32.

At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Industrial Cleaner, Kitchen Helper, and Laundry Laborer. AR 33.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the application date of April 6, 2022. AR 34.

## V. Issues Presented

Plaintiff asserts two claims of error:

Plaintiff first asserts that "The ALJ's mental RFC determination is the product of legal error where the ALJ (without explanation), failed to account for all of the assessed non-exertional moderate limitations." MSJ at 3.

Second, Plaintiff asserts that "The ALJ erred by failing to properly develop the record with regard to Plaintiff's mental impairments." MSJ at 3.

### A. RFC Generally

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

**B. <u>Standard of Review</u>**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); see Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.; accord Kitchen

v. Kijakazi, 82 F.4th 732, 738 (9th Cir. 2023). To determine whether substantial evidence supports the Agency's findings, the court must review "all the pages of the ALJ's decision," Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th Cir. 2022), "weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion," Aukland, 257 F.3d at 1035 (citation omitted). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

**C. Evaluating Mental Impairments**

"In evaluating mental impairments, an ALJ must rate a claimant's degree of limitation in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Spears v. Saul, 842 F. App'x 107, 108 (9th Cir. 2021) (citing 20 C.F.R. § 404.1520a(c)(3)). "These factors are generally analyzed in a Psychiatric Review Technique Form (PRTF) ... at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two." Restifo v. Astrue, No. ED CV 10-01469, 2011 U.S. Dist. LEXIS 64552, 2011 WL 2415775, at *1 (C.D. Cal. June 15, 2011) (citing SSR 85-16, 1985 SSR LEXIS 18, 1985 WL 56855). Thus, in determining a claimant's mental RFC, the ALJ must fully consider "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404.1545(c), 416.945(c).

Also, when evaluating mental impairments the ALJ first evaluates "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant has "a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ then "rate[s] the degree of functional limitation resulting" from the impairment. Id. § 404.1520a(b)(2). The ALJ considers

four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. § 404.1520a(c)(3).

Importantly, the Social Security Administration supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step evaluation process. See generally 20 C.F.R. § 404.1520a. First, the ALJ must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four areas are known as the "Paragraph B" criteria. Id.

Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). Under Appendix 1, to satisfy to the Paragraph B criteria, a claimant's mental [*9] impairment renders them disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). By contrast, an "extreme" limitation is the inability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. See 20 C.F.R.

§ 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. See 20 C.F.R. § 404.1520a(d)(3).

**D. <u>Discussion</u>**

**1. <u>Accounting for Moderate Mental Limitations</u>**

**a. <u>ALJs Step 3 Finding</u>; <u>Applicable Law</u>**

At step three, the ALJ found that Plaintiff had a moderate limitation in: 1- understanding, remembering or applying information; 2- interacting with others; and 3- concentration, persistence, and pace. Plaintiff contends that "the ALJ's assessed mental RFC does not account for Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace." MSJ at 9.

Per the regulations, "when we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R § 416.920a(c)(4). The existence of two marked limitations or one extreme limitation satisfies listing 12.15 and is per se disabling, whereas an impairment causing no more than mild limitations in any area is generally considered a non-severe impairment. 20 C.F.R. § 416.920a(d)(1).

As relevant here, the "SSA defines a 'moderate' limitation to mean '[t]here is more than a slight limitation in this area, but the individual can still function satisfactorily.'" *Rose M. E. v. Saul*, 2021 WL 1612091, at *3 (C.D. Cal. Apr. 26, 2021) (citing HALLEX (Hearings Appeals and Litigation Law Manual) I-2-5-20, referencing Form HA-1152-U3 (Medical Source Statement of Case 1:21-cv-00134-GSA Document 17 Filed 01/21/22 Page 14 of 16 Ability to do Work-related Activities (Mental)).

Courts have noted that "[m]oderate mental functional limitations . . . are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks").

McLain v. Astrue, 2011 WL 2174895, *6 (C.D. Cal. 2011). Even though moderate limitations are not per se disabling, courts have often found they must be incorporated in the RFC. See, e.g. Wascovich v. Saul, 2:18-CV-659-EFB, 2019 WL 4572084, at *4 (E.D. Cal. Sept. 20, 2019) ("Where the ALJ accepts the medical assessment of moderate limitations, those limitations must be accounted for in the RFC."); (citing *Betts v. Colvin*, 531 F. App'x 799, 800 (9th Cir. 2013)). "This does not necessarily mean that the ALJ was required to explicitly transcribe the limitation in the RFC. Rather, he is required to account for it in his 'translation.'" Wascovich, 2019 WL 4572084 at *5; Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

**b. Analysis**

The mental portion of the RFC specified that Plaintiff "can understand, remember, and carry out simple instructions; and she can occasionally interact with supervisors and coworkers; she can have no interaction with the public; and she cannot perform job duties requiring team work or tandem work." AR 23.

The parties disagree as to whether this was an adequate translation of the moderate limitations in maintaining concentration, persistence and pace.

Plaintiff argues as follows:

> Here, the ALJ failed to meaningfully explain why the above-identified moderate limitations—namely ability to maintain concentration, persistence, and pace – was not accounted for in the RFC or explicitly rejected. Districts within the Ninth Circuit have recognized that the ALJ must build a logical bridge between the evidence and his conclusions. Darin W. v. Comm'r of Soc. Sec., No. 3:22-CV-5315-DWC, 2022 WL 12399313, at *3 (W.D. Wash. Oct. 21, 2022). No such bridge exists here where the ALJ himself assessed Plaintiff with moderate limitations in several Paragraph B criteria but failed to account for said limitations in the crafted RFC. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a Plaintiff's limitations is defective"). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th

> Cir. 2012); see also Jennifer E. C. v. Kijakazi, No. ED CV 20-1815-PLA, 2021 WL 9563345, at *3 (C.D. Cal. Nov. 23, 2021).
>
> Lastly, the ALJ's error in this case is not harmless. An error is harmful when it has some consequence on the ultimate non-disability determination. Corso v. Kijakazi, No. 2:20-CV-1099 AC, 2022 WL 2193388, at *7 (E.D. Cal. June 17, 2022) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's failure to account for all of these non-exertional limitations that he himself assessed resulted in a mental RFC that exceeds Plaintiff's actual abilities.

MSJ at 11 (emphasis added).

Essentially Plaintiff's argument asserts that Plaintiff's moderate limitations were not accounted for, or explicitly rejected in the RFC, thus constituting harmful error. However, Plaintiff offers no examples from case law or other suggestion about how the moderate limitation in concentration, persistence and pace should have been incorporated, or why the RFC as written is inadequate.

Defendant on the other hand offers the following explanation as to why the RFC is sufficient as written:

> The limitation to simple instructions accounts for Plaintiff's moderate limitation in this domain because it is easier to stay on task when doing work involving only simple instructions because the work is easier to understand and know how to do than more complex work. Indeed, the regulations specify that examples of abilities related to this domain include initiating and performing a task that the claimant understands and knows how to do. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(E)(3). Further, the limitation to only occasional social interaction with no team or tandem work also accounts for moderate limitation in this domain because the very limited social interaction required for such work reduces the opportunity for distraction resulting from social interactions in the workplace. Indeed, the regulations specify that examples of abilities related to this domain include working close to or with others without interrupting or distracting them. The ALJ did what she was required to do when she resolved ambiguities in the medical evidence regarding Plaintiff's limitations and crafted an RFC reflecting the most that Plaintiff could do, based upon what the evidence showed. Thus, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitation in concentration, persistence, or pace.

Resp. at 5.

The Court finds that although the ALJ did not articulate this precisely, the logical bridge

between the moderate limitation finding and the RFC is fairly self-evident. Simple tasks in isolation are more conducive to concentration, persistence and pace than complex tasks requiring public and co-worker interaction.

Further, the Ninth Circuit's decision in Stubbs–Danielson is instructive. The Ninth Circuit explained that the ALJ appropriately translated "pace and the other mental limitations regarding attention, concentration, and adaption" into "the only concrete restrictions available to him," namely a limitation to simple tasks. Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

Defendant provides additional case law that, although non-controlling, is nevertheless supportive of the same proposition:

> Resp at 5 (citing Shoemaker v. Berryhill, 710 Fed.Appx. 750, 751 (9th Cir. 2018) (unpublished) ("The ALJ found that [claimant] had moderate difficulties with concentration, persistence, and pace and limited [claimant] to 'simple, routine tasks'"); Turner v. Berryhill, 705 Fed.Appx. 495, 498-99 (9th Cir. 2017) (unpublished) (ALJ's "RFC determination limiting [claimant] to 'simple, repetitive tasks,' … adequately encompasse[d] [claimant's] moderate difficulties in concentration, persistence, or pace, [and was] compatible with [DOT] jobs requiring Level 2 reasoning"); Lee v. Berryhill, 721 Fed.Appx. 604, 608 (9th Cir. 2017) (unpublished) ("the ALJ accounted for his finding that [claimant] had moderate difficulties in concentration, persistence, or pace by limiting [claimant] to 'simple repetitive tasks' because this limitation accorded with the restrictions discussed in the medical record"); Lawhorn v. Colvin 609 Fed.Appx. 449, 450 (9th Cir. 2015) (unpublished) (same); see also Wilder v. Comm'r of Soc. Sec., 545 Fed.Appx. 638, 639 (9th Cir. 2013) (unpublished); Yasuda v. Comm'r of Soc. Sec., 473 Fed.Appx. 787, 788 (9th Cir. 2012); Propps v. Comm'r of Soc. Sec., 460 Fed.Appx. 657, 657-58 (9th Cir. 2011) Evans v. Comm'r of Soc. Sec., 434 Fed.Appx. 712, 713 (9th Cir. 2011) (unpublished).

Thus, the ALJ appropriately accounted for Plaintiff's limitations in concentration, persistence and pace by limiting Plaintiff to simple tasks with no public contact, and no jobs that require team or tandem work.

**2. Failure to Develop the Record**

**a. Applicable Law**

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In making a determination of disability, the ALJ must develop the record and interpret the medical evidence.") (citation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.") (citation omitted) (emphasis added). However, the ALJ's duty to conduct an appropriate inquiry is triggered only when there is "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citations omitted). When triggered, the ALJ "may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, [*7] or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted).

Finally, a specific finding of ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011); *Garcia v. Comm'r of Soc. Sec.*, No. 1:19-CV-00545-SAB, 2020 WL 1904826, at *13 (E.D. Cal. Apr. 17, 2020).

**b. Analysis**

Plaintiff argues as follows:

> Here, the ALJ erred by partially relying upon the stale findings of the non-examining, nontreating state agency psychological consultants, Dr. E. Penner, Ph.D. and S. Kaper, Ph.D. in crafting the mental RFC and then crafting from "whole cloth" the remaining non-exertional limitations. (AR 29-30). Specifically, the ALJ found that "The Disability Determination Service psychiatric opinions are somewhat persuasive as they are consistent with the evidence available at the time

> of the respective reviews." (AR 30). In particular, the ALJ rejected the following from DDS: "The Disability Determination Service assessment of a limitation to 1-2 step tasks is not persuasive, as it is not consistent with her ability [to] track information for multi-step games, and to learn facts from games, share them on Discord, and get information about games from Discord. It is also not consistent with her ability to perform online shopping…." MSJ at 12–13 (citing AR 29).
>
> . . .
>
> The DDS determinations were made stale not by the mere passage of time but because of the evident worsening of symptoms after these determinations had been rendered. For example, On April 4, 2024 the Plaintiff's therapist requested an urgent visit with Dr. Randhawa as at her therapy session she presented as angry with <u>self-harm behaviors</u> . . . (AR 918-920) . . . She exhibited audio and visual hallucinations and paranoia in the office. She was started on Risperdal 1mg, her Zoloft was increased to 150mg, her Hydroxyzine 25 was continued, and her Abilify was stopped. (AR 921). The Plaintiff continued treatment where she reported continued paranoia (AR 930), sedation from her medication (AR 942) . . .
>
> On May 6, 2024, Plaintiff's mother requested assistance finding placement for the Plaintiff as the Plaintiff was increasingly more abusive, with reported of verbal abuse, banging on the door and kicking her the bedroom door. (AR 940). Given the apparent worsening of Plaintiff's psychiatric state since the time of the non-examining, non-treating psychiatric opinions, the ALJ erred by failing to develop the record with a psychiatric consultative examination
>
> . . .
>
> However, the ALJ is not permitted to fill the evidentiary gaps of the record by rendering a medical judgment and interjecting his own medical opinion to develop the RFC. See Tackett v. Apfel, 180 F.3d at 1102 (there was no medical evidence to support the plaintiff could sit through an 8-hour day with 2 hour breaks and allowance for change of positions); see Katie E. B. v. Kijakazi, No. 20CV2354-MDD, 2022 WL 4595062, at *8 (S.D. Cal. Sept. 30, 2022) ("As a layperson, an ALJ is not qualified to extrapolate functional limitations from 'raw medical data' but may make reasonable inferences from medical evidence susceptible to a lay understanding." . . . MSJ at 12–14

From this argument Plaintiff appears to make 3 core contentions: 1- that the opinions of Drs. Penner and Kaper[1] were stale by the time of the ALJ decision which occurred on September 23, 2024; 2- that records subsequent to April 21, 2023, the date of the reconsideration determination, and prior to the ALJ's decision, demonstrated worsening of Plaintiff's condition; and 3- that the ALJ erred in independently reviewing the records as a layperson and formulating

[1] The opinions of the experts who reviewed Plaintiff's file at the initial and reconsideration levels are variously referred to by the Parties' in their briefing and in the ALJ decision as: non-examining, state agency, psychiatric, and disability determination service (DDS) consultants. For ease of reference, they will be referred to here simply as Drs. Penner and Kaper.

the RFC rather than developing the record with a consultative examining opinion.

Defendant responds:

> In particular, "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." Bufkin v. Saul, 836 F. App'x 578, 579 (9th Cir. 2021). Indeed, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Further, a "medical advisor is not required when, despite some inadequacies, a relatively complete medical chronology of the claimant's condition during the relevant time period is available. In these situations, the ALJ's duty to develop the record is discharged." Mettert v. Comm' r Soc. Sec. Admin., 2023 WL 4558066, at *3 (D. Ariz. July 17, 2023) (citing Wellington v. Berryhill, 878 F.3d 867, 874 (9th Cir. 2017)). A claimant cannot use the ALJ's duty to develop the record to shift the burden of proving disability to the ALJ. Mayes, 276 F.3d at 459-60
>
> Here, there was no ambiguity or inadequacy in the record. Rather, there were medical records covering 2022 through August 2024, representing virtually all of the period under review. See AR 375-1206. This included mental health treatment records documenting reports of auditory hallucinations that Plaintiff was able to ignore, improved mood regulation, and typically unremarkable mental status examination findings. AR 495-96, 499-500, 502-03, 509, 513-14, 517-18, 522-23, 527-28, 614. This also included treatment notes indicating good control of mental health symptoms with medication. AR 646, 699-700, 951. The record also included prior administrative medical findings from two State agency psychologists, both of whom found that Plaintiff was capable of performing simple work. AR 80, 99. The record also included Plaintiff's own reports of her activities, which did not suggest greater mental functional limitation than found in the RFC, including playing multiplayer games online, messaging others within games, maintain an active social media presence, doing household chores, playing card games and board games, helping a friend pack and move, and shopping in stores and by computer. AR 49-55, 265-67. Plaintiff has not shown that the record before the ALJ was too ambiguous or inadequate to allow for a proper evaluation of this claim.
>
> Plaintiff overlooks that "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence," and ultimately, they are the "final arbiter[s] with respect to resolving ambiguities in the medical evidence." Farlow, 53 F.4th at 488 (first quote); Tommasetti, 533 F.3d at 1041 (second quote). Further, Plaintiff, who was represented at the hearing, does not allege that she requested further record development by the ALJ, nor did she submit an opinion from any of her treatment providers. As the Seventh Circuit has noted, when a Plaintiff presents no medical opinion and does not request further development from the ALJ, "the appropriate inference is that she decided that another expert opinion would not help her." Buckhanon ex rel. J.H. v. Astrue, 368 F. App'x 674, 679 (7th Cir. 2010). Here, the ALJ did not interpret raw medical data—such as reading uninterpreted imaging or laboratory results. Rather, she looked at all the evidence of record, including evidence from May and June 2024

> indicating that she was doing "much better," her medications appeared to be working, and she was better able to focus. AR 28-29 (citing AR 941, 951). Notably, the ALJ reviewed these records dating from after Plaintiff contends that her symptoms worsened in April and May 2024. ECF No. 13 at 13-14. Plaintiff's belated contention that her condition worsened does not create a duty to obtain additional opinions, particularly where Plaintiff did not ask the ALJ to do so. Substantial evidence supports ALJ's findings. Therefore, this Court should affirm.

To begin, the following portions of Defendant's argument miss Plaintiff's core argument: 1- "Here, there was no ambiguity or inadequacy in the record. Rather, there were medical records covering 2022 through August 2024, representing virtually all of the period under review. See AR 375-1206."; and 2- "a relatively complete medical chronology of the claimant's condition during the relevant time period is available." However, Plaintiff's core argument not only acknowledges the "relatively complete medical chronology," but actually relies on much of it to support her argument that a further psychiatric consultative examination was necessary.

Defendant is correct that an ALJ is, in varying degrees, capable of---and tasked with---independently reviewing and forming conclusions about medical evidence to determine whether a claimant is disabled and cannot work. Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022). In addition, the residual functional capacity does not need to directly correspond to a specific medical opinion; rather,"the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ's residual functional capacity assessment should be affirmed if the ALJ has applied the proper legal standard and the decision is supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Conversely, there are instances when an ALJ should obtain guidance from a medical expert. Although there are no clear parameters circumscribing the ALJ's discretion to independently interpret medical evidence, some courts have found that an ALJ errs in independently interpreting medical evidence when it involves: 1) review of raw medical data such

as complex imaging findings or laboratory testing results, 2) worsening of underlying impairments, or 3) development of new impairments. See, e.g., Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); Goodman v. Berryhill, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."); Stevenson v. Colvin, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining state agency physician, an opinion which pre-dated "plaintiff's treating records regarding the progression of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.").

All said, Plaintiff's argument can be summarized as follows: 1- the ALJ filled in evidentiary gaps by impermissibly rendering a medical judgment; 2- that records document a worsening of her mental health conditions following the opinions of Drs. Penner and Kaper at the initial and reconsideration levels which occurred on September 14, 2022, and April 21, 2023, respectively, and 3- that the developments reflected in the records the ALJ did rely on rendered those opinions stale.

Next, after discussing ophthalmology records not at issue here, the ALJ cited and described the following mental health treatment records, the accuracy and completeness of which is not disputed. These records are truncated here for brevity and ease of reference.

- May 2021 records document amphetamine induced psychotic disorder and unspecified depressive disorder, reporting previous daily use of methamphetamine and most recent use two months earlier. (Exhibit 3F, pp. 14-15).

- July 2021 records noting auditory hallucinations daily since September 2020 causing memory problems and difficulty focusing; suffering verbal, mental, and sexual abuse since she[2] started her transition in 2018. She reported hearing voices though the provider was unsure if this was due to mental health problems or substance abuse (Exhibit 3F, p. 17)
- January 2022 records indicate discontinued hormone replacement therapy for 2 years, okay mood, daily auditory hallucinations relieved by Abilify, music, talking to her mother, socializing through online gaming. The provider noted her prognosis was highly dependent upon her abstinence from substances, including marijuana (Exhibit 3F, p. 53). She noted decreased intensity and frequency of voices. She noted therapy was going well, she feels supported, her depressed mood has improved and she reported continued sobriety (Exhibit 3F, p. 60).
- March 2022 records noted decreased auditory hallucinations with Abilify dose change with the recent adjustment to her dose of Abilify (Exhibit 3F, p. 41).
- April 2022 records indicate she could easily ignore auditory hallucinations, continues to smoke marijuana a few times a week, mental status examination was generally within normal limits, she has been doing well with Abilify and mirtazapine. It was noted that Methamphetamine use seems to have clearly caused a psychotic break, but there is a question of possible presence of psychosis "even base for substance use" and presence of significant mood symptoms. Depressed mood was improving due to improved psychosocial stressors (mainly that of living with her father who disapproves of her transgender status). Her prognosis was again noted to be highly dependent on her abstinence from substances and with stability of psychosocial stressors. The claimant reported their mood has been stable (Exhibit 3F, pp. 33-34)
- August 2022 records notes she felt "really good," was reaching out to old friends, was not depressed, Abilify improved her mental clarity and to manage hallucinations. She denied significant depression or psychosis. The only abnormality on the mental status examination was hearing voices at night and seeing shadow people (Exhibit 6F, pp. 15-17).
- December 2022, she was planning a trip to see a friend, developed right eye blindness after a surgery, was increasing socialization (Exhibit 6F, pp. 27-28).
- January 2023 she stopped taking Abilify for 3 weeks and increased alcohol use, had some relationship issues, but schizophrenia symptoms were stable (Exhibit 7F, p. 11).
- March 2023 records note medication significantly decreased symptoms. She could stay home alone for long periods and order grocery delivery. She was gaming and socializing. She denied hallucinations, suicidal and homicidal ideation. (Exhibit 9F, pp. 15-16).
- March 6, 2023[3] mental status exam was within normal limits. She denied hallucinations and stated her mood was "pretty good." She found Zoloft beneficial for managing her intrusive thoughts, depression, and anxiety. She denied ongoing hallucinations and denied recurrence of psychosis. She had been off Abilify since January 2023. The provider noted her psychosis possibly stemmed from a medical

[2] These are the same pronouns used by the ALJ.
[3] The ALJ cited this record as dated April 1, 2023. But that was the "date created" timestamp ("04/01/2023 at 12:24 PM PDT"). The date of service was actually March 6, 2023. AR 698.

cause, although it was more likely related to mood. She would be able to restart Abilify in the future if psychosis returned as it was reportedly very beneficial. Her provider also noted that use of methamphetamine precipitated a psychotic break. prognosis remains highly dependent on her abstinence from substances and stability with psychosocial stressors (Exhibit 9F, pp. 7-8)

- October 16, 2023 records document hormone replacement therapy was modified on September 6, 2023 and the claimant was diagnosed with major depressive disorder, recurrent, moderate (Exhibit 11F, p. 2).
- April 4, 2024 records indicate that she yelled at her mother because she would not give her $50 to play a game. She threatened to leave the home and to go out and use methamphetamine if she were not given the money. Notably, she used $600 the previous month for gambling (Exhibit 13F, pp. 47-48).
- May 2024 records indicate the claimant was doing "much better" (Exhibit 13F, p. 71).
- At her June 2024 encounter, the claimant reported that "the meds appear to be working as AH [auditory hallucinations] have become quiet and she is able to focus better" (Exhibit 13F, p. 81). She also reported that she cannot engage in activities due to lack or means/income to do so (Exhibit 13F, p. 81).

The ALJ concluded by stating, "Together, her treatment records show an overall pattern of improvement with medication, targeted medication adjustments, and abstinence from methamphetamine." AR 29. However, findings also show that Plaintiff's symptoms ebbed and flowed, with most of the abnormal symptoms and findings reported *after* the April 21, 2023 reconsideration determination of Dr. Kaper. Plaintiff asserts that these records, or at least some of them, were independently reviewed and relied upon by the ALJ without the benefit of an interpretation supplied by a psychiatric consultative examiner.

An example of the ebb and flow of Plaintiff's symptoms is illustrated by the July 2021 record which noted auditory hallucinations daily since September 2020, but then throughout 2022 and up until March of 2023 Plaintiff reported decreased hallucinations or no hallucinations with Abilify, improved mood, increased socialization, and ultimately no continued need for Ability. Notably, the reconsideration determination was rendered shortly thereafter on April 21, 2023.

Another relevant record is dated Oct.16, 2023 which is referenced above. It documents

that Plaintiff's hormone replacement therapy was modified on September 6, 2023 and Plaintiff was diagnosed with major depressive disorder, recurrent, moderate. (Exh. 11F, p2). This record post-dated the April 21, 2023 reconsideration determination.

The ALJ's summary then skips forward to an April 4, 2024 record which describes an incident between Plaintiff and her mother concerning a $50 video game. The provider stated, "Mother reported client isn't being transparent with med team and attends appts stating she is feeling well when in fact she has been struggling w/ MH sxs. [mental health symptoms]." AR 917.

Thereafter is an April 8, 2024 visit where Plaintiff reported feeling better than the previous week. During the previous week Plaintiff apparently self-harmed. Plaintiff showed the clinician a burn injury on her hand. AR 919. Plaintiff reported she had not self-harmed for several months prior to that. Id. Plaintiff denied visual and auditory hallucinations. Id. It is unclear if the ALJ was aware of this record.

One day later, on April 9, 2024, Plaintiff returned to the same psychiatrist pursuant to Plaintiff's therapist's request that Plaintiff be urgently seen. AR 920. Plaintiff reported, "I had one episode of seeing things, a white face like a ghost today, and I hear people form outside talking and whispering and high frequency sounds from the ceiling." Plaintiff reported increased paranoia and auditory hallucinations during the previous couple of weeks. Id. The provider noted that this paranoia was observable during the visit. Plaintiff's mother indicated "Jackie has been lying during the appointment and not telling the truth." Plaintiff's mother went on to explain that Plaintiff "has been minimizing symptoms during visits with the psychiatry team." Id. Abilify was discontinued, Risperdal was started, and Sertraline dosage was increased to 150mg. Id. As noted above, in May Plaintiff was doing "much better," and in June Plaintiff denied auditory hallucinations.

Oddly, the April 9, 2024 visit does not appear in the ALJ's chronology set forth above. In fact, the ALJ provided very limited coverage of the entire 13F exhibit. This exhibit spans the dates beginning May 1, 2023, and continues to August 12, 2024. It contains 104 pages of records from Plaintiff's psychiatric treatment team at Tulare County Health and Human Services Agency in Visalia. AR 871–974. Additionally, the chronology above does not cover a February 6, 2024 visit which also reflected hallucinations, paranoia, anxiety, and that Plaintiff's Abilify dose was increased to 10mg. AR 889.

Given the above records, the ALJ's nondisability determination cannot be said to be supported by substantial evidence. Plaintiff suffered from daily hallucinations which were present from September 2020 to July 2021, and although Plaintiff's condition improved up to and including the reconsideration decision on April 21, 2023, after that her symptoms returned and waxed and waned as reflected in exhibit 13F, even though by May and June of 2024 her hallucinations were again absent.

In sum, Plaintiff's treatment records that postdate April 21, 2023, and which predate the ALJ's hearing in September 2024, reflect a history of vacillating symptoms, improvements in some respects with worsening in others, the presence and absence of auditory and visual hallucinations, self-harm behaviors, hormone therapy adjustments, and adjustments to the type and dosage of psychotropics like Abilify and Risperdal.

Although these records are not necessarily "raw medical data," they do present a very complicated and multifaceted clinical picture making it arguably necessary for the ALJ to have had Plaintiff further evaluated by a consultative psychiatric expert who could render an opinion on Plaintiff's mental functionality.

Given that errors in Social Security disability determinations are subject to harmless error analysis (Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig

v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012), and because it cannot be said here that the ALJ's decision was 'inconsequential to the ultimate nondisability determination', the ALJ's error was thus not harmless making remand appropriate. (See, Treichler, 775 F.3d at 1099 (citation omitted).

## VI. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, be **GRANTED**
2. Defendant's Cross Motion, ECF No. 15, be **DENIED**
3. That this action be **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with these Findings and Recommendations.
4. That the Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security

## VII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 30, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE